UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:21-cr-80026-AMC

UNITED STATES OF AMERICA

vs.

DIEGO NAVARRO,

        Defendant.
_____/

## STIPULATION OF FACTS AND ACKNOWLEDGMENT OF OFFENSE ELEMENTS IN SUPPORT OF GUILTY PLEA

The United States of America, by and through its undersigned Assistant United States Attorney, and DIEGO NAVARRO, (hereinafter referred to as the "Defendant" or "NAVARRO"), together with his counsel, admit that the government can prove the allegations contained in Count One of the Indictment, Conspiracy to Possess with Intent to Distribute, and Distribute, 400 Grams or more of Fentanyl, in violation of Title 21, United States Code, Sections 846, 841(a), and 841(b)(1)(A). The Defendant also stipulates that those allegations and the following recitation of the facts shall constitute the underlying factual basis. These facts are offered for the limited purpose of the guilty plea and consequently does not contain all of the facts known to the government in this case:

    During the dates alleged in the Indictment, NAVARRO was involved in a conspiracy that involved the distribution of fentanyl in the Southern District of Florida and elsewhere. NAVARRO's role in the conspiracy, among other things, was to mail parcels containing drugs to South Florida and other states, and to retrieve cash proceeds from South Florida and elsewhere.

    On multiple date during the timeframe alleged in the Indictment, NAVARRO and co-defendant Jose Esquer were captured on surveillance cameras mailing parcels out of multiple San Diego County Post Office location to other states, including areas in South Florida. Some of these parcels were seized by law enforcement and were found to contain fentanyl.

    On one particular occasion, NAVARRO traveled with three co-defendants from California to Palm Beach County to purchase one kilogram of fentanyl and mail it to another state. On or about March 26, 2020, law enforcement received a travel alert from

American Airlines that Esquer, NAVARRO, Manuel Topete and Andrew Ruelas were traveling to West Palm Beach, Florida from San Diego, California. At approximately 10:15 a.m., agents, assisted by warrant-authorized GPS location data from a telephone number used by Esquer, located the four subjects sitting on a bench at the Walmart located at 4375 Belvedere Road, West Palm Beach, Florida. Surveillance agents visually confirmed the identities of two of the subjects as Esquer and NAVARRO as they were previously known to law enforcement in the course of this investigation. All four of the subjects were observed going into Walmart and going to the general area of the store containing packaging material. Security camera footage showed Esquer and NAVARRO purchasing packaging material. At approximately, 10:37 a.m., the four subjects were observed walking over to Nana's Diner located at 1230 N. Military Trail, West Palm Beach, Florida. All four individuals were observed individually handling and counting cash. Photographs were taken by surveillance agents.

At approximately, 11:18 a.m., the four individuals were observed going back to the northwest corner of the Walmart parking lot. At approximately, 12:12 p.m., a silver Nissan Pathfinder arrived at the location and surveillance agents observed co-defendant Emelio Santiago, an individual previously known to law enforcement, exiting the driver side of the vehicle and meeting with the four subjects at the rear of the vehicle. Santiago was observed opening the rear hatch of the vehicle, reaching inside, taking a tan color book bag from the spare tire compartment area of the vehicle, and handing it to Esquer. Esquer was observed inspecting the inside of the book bag before taking possession of it. At that point, Santiago left the area. Subsequently, all four remaining subjects walked to the north end of the parking lot toward a trees bordering the northwest edge of the lot.

NAVARRO was observed putting on blue latex gloves and transferring the contents of the tan book bag into a manila envelope as Esquer looked on. Ruelas and Topete were observed keeping watch, while NAVARRO and Esquer manipulated the packaging material and the contents of the book bag. Shortly thereafter, the group departed the parking lot northbound along Military Trail with NAVARRO discarded items, including blue latex gloves as he walked.

The subjects then again stopped in front of Nana's Diner for several minutes. At approximately, 12:37 p.m., the four subjects were observed getting into a black Land Rover which agents believe to have been a ride share service. At approximately, 12:48 p.m., the four subjects were observed arriving at the Downtown West Palm Beach Post Office located at 640 Clematis Street, West Palm Beach, Florida 33401. At that time, Esquer was observed entering the counter area of the Post Office and completing parcel mailing labels. At approximately 12:54, he departed the counter area and was observed meeting the other individuals outside the Post Office. At approximately, 12:58 p.m., NAVARRO was observed entering the counter area of the Post Office with two parcels. NAVARRO mailed the two packages which were retrieved by US Postal Inspectors.

A federal search warrant was obtained and executed the same day as to the two mail parcels. The two packages contained a total of approximately one kilogram of a substance that field-tested positive for fentanyl. Lab reports confirmed the substance to

be fentanyl.

I am aware of and understand the nature of the charges to which I am pleading guilty, because I have discussed the charges and what the prosecutor must prove to convict me with my attorney. I understand that the United States must prove the following facts (or "elements") of the offenses beyond a reasonable doubt:

Count 1:   Title 21, United States Code, Section 846:

(1) two or more people in some way agreed to try to accomplish a shared and unlawful plan;

(2) the Defendant, knew the unlawful purpose of the plan and willfully joined in it; and

(3) the object of the unlawful plan was to possess with the intent to distribute or distribute 400 Grams or more of Fentanyl.

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

Date: 8/12/21

By: *Marton Gyires*
MARTON GYIRES
ASSISTANT UNITED STATES ATTORNEY

Date: 8-13-21

GREGORY JOSEPH MORSE
ATTORNEY FOR DEFENDANT

Date: 8-13-21

DIEGO NAVARRO
DEFENDANT

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:21-cr-80026-AMC

UNITED STATES OF AMERICA

vs.

DIEGO NAVARRO,

      Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and DIEGO NAVARRO (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Count One of the Indictment, which charges him with Conspiracy to Possess with Intent to Distribute, and Distribute, 400 Grams or more of Fentanyl, in violation of Title 21, United States Code, Sections 846, 841(a), and 841(b)(1)(A).

2. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the

1

guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. As to Count 1, the Court may impose a term of imprisonment of up to life, and must impose a term of imprisonment of at least ten (10) years, followed by a term of supervised release of at least five (5) years and up to life. In in addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $10,000,000.00.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $100.00 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If the defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

5. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6. The Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1 of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, the government will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. The government agrees that it will recommend a sentence at the low end of the Guideline range as determined by the Court. However, the Office will not be required to make these sentencing recommendations if the defendant: (1) fails or refuses to make full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the Office prior to entering this Agreement; or (3) commits any misconduct after entering into this Agreement,

including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. Pursuant to Section 5C1.2 of the Sentencing Guidelines, the Court should impose a sentence within the Sentencing Guidelines range without regard to any statutory minimum sentence identified in paragraph 3 above, provided that:

(i) the Defendant does not have:

1. more than four Criminal History points, excluding any Criminal History points resulting from a 1-point offense, as calculated under the Sentencing Guidelines;

2. a prior offense earning three points as calculated under the Sentencing Guidelines; or

3. a prior violent offense (as defined in 18 U.S.C. § 16) earning two points as calculated under the Sentencing Guidelines;

(ii) the Defendant did not use violence or credible threats of violence or possessed a firearm or other dangerous weapon (or induced another participant to do so) in connection with the offense;

(iii) the offense did not result in death or serious bodily injury to any person;

(iv) the Defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the Sentencing Guidelines and was not engaged in a continuing criminal enterprise; and

(v) not later than the time of the initial sentencing hearing, the Defendant has truthfully provided to this Office all information and evidence that the defendant

has concerning the offense of offenses that were part of the same course of conduct or of a common scheme or plan.

8. Provided that the Defendant satisfies the criteria in paragraph 7, in exchange for the Defendant's express agreement that he will not later seek a further reduced sentence pursuant to 18 U.S.C. § 3582(c) in the event the Commission amends Section 5C1.2 to conform to the safety-valve criteria in the current version of 18 U.S.C. § 3553(e) under the First Step Act of 2018 and makes any such amendment retroactive, this Office will not object to a downward variance of two levels from the guideline range calculated under the current Guidelines Manual (to reflect the 2-level reduction currently contemplated in 2D1.1(b)(18)). However, if the Court does not grant the two-level variance requested on the basis of the proposed amendment, then the Defendant shall be released from the above-described agreement relating to 18 U.S.C. § 3582(c). This Office remains free to oppose a variance sought on any other grounds. The Defendant understands and agrees that this provision is not binding on the Court or the Probation Office, and that the Court remains free to deny any variance requested by either party or jointly.

9. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the government, or the probation office, is a prediction, not a promise, and is not binding on the government, the probation office or the Court. The defendant understands and acknowledges, as previously acknowledged in paragraph 2 above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation

made by the defendant, the government, or a recommendation made jointly by both the defendant and the government.

10. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

Date: 8/12/21    By: *Marton Gyires*
MARTON GYIRES
ASSISTANT UNITED STATES ATTORNEY

Date: 8-13-21
GREGORY JOSEPH MORSE
ATTORNEY FOR DEFENDANT

Date: 8/13/21
DIEGO NAVARRO
DEFENDANT