UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:21-cr-80026-AMC

UNITED STATES OF AMERICA

vs.

DIEGO NAVARRO,

        Defendant.
_____/

### SENTENCING MEMORANDUM with INCORPORATED MOTION FOR A DOWNWARD DEPARTURE and/or DOWNWARD VARIANCE

     COMES NOW, the Defendant, DIEGO NAVARRO, by and through undersigned counsel, and respectfully files this Sentencing Memorandum requesting a total four-level downward departure and/or downward variance akin to a level 29, criminal history category II, which results in a sentencing range of 97-121 in prison and respectfully requests that this Court sentence Mr. Navarro to 97 months in prison. As grounds:

     1.    The Defendant pled guilty to one count of Conspiracy to Possess with Intent to Distribute 400 Grams or more of Fentanyl, in violation of Title 21, United States Code, Sections 846, 841(a), and 841(b)(1)(A).

     2.    Mr. Navarro was indicted along with seven co-defendants. At the time of writing this memorandum, four of the co-defendants have been sentence and their sentences range from 24 months in prison to 240 months in prison.

     3.    According to the facts in the PSR (¶ 77), Mr. Navarro is responsible for a fentanyl weight of at least 12 kilograms and a methamphetamine weight of at least 1.4 kilograms. Mr. Navarro is responsible for a weight equal to or less than his co-defendant Jose Esquer who received a sentence of 120 months in prison.

4. The Defendant immediately accepted responsibility for his actions and entered his plea on August 17.

5. Sentencing is scheduled for December 9, 2021.

6. U.S. Probation calculated Mr. Navarro's Guidelines for a Total Offense level of 33 and applied four criminal history points for a criminal history category III, which results in an advisory guideline range of 168-210 months (PSR ¶¶ 102 and 109).

7. While Mr. Navarro's charge carries a ten-year minimum mandatory sentence, he qualifies for safety-valve pursuant to 18 U.S.C. § 3553(f)(1)-(5), and thus the Court can sentence him without regard to the minimum mandatory sentence (PSR ¶ 92). However, due to a statutory glitch, which is explained below, he does not qualify for the additional two-level reduction provided for in USSG §§ 2D1.1(b)(18) and 5C1.2(a)(1)-(5).

8. Mr. Navarro grew up in Escondido, California to immigrant parents from Mexico who provided a middleclass upbringing (PSR ¶ 115). Mr. Navarro is described as "quiet, respectful, friendly, and easy-going." (PSR ¶ 116).

9. At six years old, Mr. Navarro suffered a traumatic incident—he was kidnapped in Tijuana Mexico. The Mexican drug cartel mistook him for his cousin whose father owned a sugar plantation in Mexico and held him for four days, during which time he was beaten and had his front teeth broken. (PSR ¶ 117). Mr. Navarro's mother is incorrect that this never happened, he has the missing teeth to prove it and she is likely avoiding a traumatic experience that maybe she feels partly responsible for.

10. Mr. Navarro has three minor children that he was supporting before his arrest. He is a smart man that has legitimate employment opportunities in the aerospace industry. For most of his adult life, he has been employed as a skilled machinist in the aerospace industry (PSR ¶¶ 137-143). He can likely return to the aerospace industry upon completion of his sentence (PSR ¶ 143).

11. A downward departure or variance akin to the low-end range of a total offense level 29 with a criminal history category II. (97-121 months) would satisfy the § 3553(a) sentencing factors in Mr. Navarro's case.[1]

## ARGUMENT

A district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. See *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). Mr. Navarro does not have a legal objection to the guideline range calculated in the PSR; however, he is seeking a downward departure and/or variance akin to reducing his guideline range to a level 29 and criminal history category II.

However, the Guidelines are not the only consideration in sentencing. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider § 3553(a) factors to determine whether they support the sentence requested by a party. As explained by the Supreme Court in *Rita,* supra, in so doing, the judge may not presume that the Guidelines range is reasonable. See *Id.* at 127 S. Ct. 2456. The judge must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, the judge must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. *Id.*, 127 S. Ct. 2456; see also, *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 596-597 (2007)(footnotes omitted).

Since the guidelines are advisory, *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738

---

[1] The referenced §3553(a) factors are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a)(1)-(7).

(2005), the ultimate goal is a reasonable sentence, *United States v. Talley*, 431 F.3d 784, 785 (11th Cir. 2005), and one which is no greater than that required to adequately punish. Although the guidelines are treated as advisory after *Booker,* the application of section 3553(a) is mandatory. However, a district court is not required to explicitly comment on every 3553(a) factor as long as the record makes clear that the court took the factors into account at sentencing. *U.S. v. Howe*, 543 F.3d 128, 137 (3d Cir.2008)(citing *U.S. v. Parker*, 462 F.3d 273, 278 (3d Cir.2006)). The court must consider the totality of the circumstances and make an individualized assessment, specific to the defendant before the court, of the 3553(a) sentencing factors. *Id.* at 137 (citing *Gall*, 128 S.Ct. at 597)). Moreover, sentencing a defendant below the guideline range is not presumptively unreasonable. *U.S. v. Wadena*, 470 F.3d 735, 738 (8th Cir.2006). A sentence is not unreasonable simply because it falls outside the advisory Guidelines range. *Gall,* 128 S. Ct. at 597. The sentencing court has "'broad discretion in imposing a sentence within the statutory range.'" *U.S. v. Tomko*, 562 F.3d 558, 564 (3d Cir.2009)(quoting *Booker*, 543 U.S. at 233)). Moreover, "[i]n the wake of *Booker*, it is essential that district courts make an "'individualized assessment based on the facts presented.'" *Id.* at 567 (quoting *Gall*, 128 S.Ct. at 597).

First, Mr. Navarro's situation underscores the irrationality of our current legal moment. That is, Mr. Navarro is caught in an absurd legal situation in which he qualifies for safety-valve relief under the applicable federal statute; but is not entitled to the benefit of a two-level reduction under the accompanying guideline. *Compare* 18 U.S.C. § 3553(f) with USSG §§ 2D1.1(b)(18) and 5C1.2(a)(1)-(5). This discrepancy results from the Sentencing Guidelines' failure to incorporate the statutory changes mandated by the First Step Act (2018).

In enacting the First Step Act, Congress expanded the category of defendants eligible for safety valve relief under the Guidelines. Section 402 amended 18 U.S.C. § 3553 (Limitation on Minimum Mandatory Penalty) to state that a defendant qualifies for safety valve if he does not have

more than four criminal history points and does not have a prior three-point offense or a prior two-point violent offense. § 3553(f). Mr. Navarro qualifies in all respects for safety valve. Nevertheless, the interplay between USSG §2D1.1(b)(18) and USSG §5C1.2(a)(1) still holds that a defendant is only entitled to a two-level reduction if they have one criminal point or less.

It does not appear that the marked conflict between the statutes and the guidelines resulted from thoughtful deliberation or empirical study by the United States Sentencing Commission. *See, e.g.*, *Kimbrough v. United States*, 552 U.S. 85, 96 (2007). Rather, it stems from the Executive branch's failure to appoint the sentencing commissioners required for a quorum, which is necessary to promulgate guideline changes. Thus, defendants such as Mr. Navarro continue to confront guidelines that were created prior to the First Step Act and thus ignore its mandates.

Confronted with such an absurdity, one district court in the Eleventh Circuit concluded that "USSG § 5C1.2(a)(1)-(5) is intended to reflect the statutory criteria in 18 U.S.C. § 3553(f), and that the First Step Act amendments to 18 U.S.C. § 3553(f) are therefore incorporated into USSG § 5C1.2(a)(1)-(5), even though the text of the Guidelines has not yet been updated." See *U.S. v. Johnson*, 379 F.Supp.3d 1213 at 1226, n.15 (U.S.D.C.M.D. Ala.). Accordingly, the court found the defendant qualified for a two-level reduction either under USSG § 2D1.1(b)(18) or as a downward variance.[2] *Id*. The court in *Johnson* further stated, *Id.* at 1218:

> Several district courts have granted variances at least in part because the drug-trafficking guidelines are not rooted in empirical evidence. For example, in *United States v. Diaz,* the court placed "almost no weight" on the Guidelines range for the defendant middleman in a heroin sale, given that "Guidelines ranges for drug trafficking offenses are not based on empirical data, Commission expertise, or," as discussed later in this opinion, "the actual culpability of defendants." 2013 WL 322243, at 1 (E.D.N.Y. Jan. 28, 2013) (Gleeson, J.). The court reasoned, based on *Kimbrough,* that a "district court's authority

---

[2] The U.S.S.C. also recognizes that the "court has authority under 18 U.S.C. § 3553(a) to grant a similar two-level reduction to the newly eligible safety valve offenders not meeting the guideline criteria." If the Court should do so, it will be considered a variance from Mr. Navarro's total offense level of 33.

> to vary from the applicable Guidelines range due to a policy disagreement is at its greatest when the offense Guideline at issue is not the product of the Commission's empirical analysis and technical expertise." *Id.* at 3.

Moreover, based on the terms set forth in the plea agreement at paragraph 8, although not binding on this Court, the Government will not object to a two-level variance based on safety valve if Mr. Navarro qualifies in all other respects, which he does. Consequently, Mr. Navarro qualifies for the two-level reduction and respectfully requests that this Court grant a downward departure or variance to an offense level 31.

Next, Mr. Navarro is seeking a downward variance akin to two more offense levels for his role in the offense, history and characteristics, and because he provided a substantial amount of information to the Government, although the information has not resulted in a 5K1.1 motion, Mr. Navarro should receive credit for his information.[3] A variance akin to a two-level reduction is reasonable.

§ 3553(a)(1) *the nature and circumstances of the offense and the history and characteristics of the defendant*:

Mr. Navarro's conduct was non-violent. He is intelligent and has the opportunity through his past employment in the aerospace industry to lead a productive, law-abiding life. His introduction to the drug cartel began with a traumatic kidnapping, while this fact does not excuse Mr. Navarro's conduct in this case, it helps inform how he came to get involved with drug dealing.

3553(2)(A-C) *reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense*; *adequate deterrence*; and *the need to protect the public*:

A sentence of 97 months in prison is more than sufficient to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter future criminal conduct and protect the public. A sentence of 97 months in prison is approximately three years more than the

---

[3] Undersigned counsel will further articulate the specific basis for this variance request at the sentencing hearing.

average sentence (61 months) for an offender with a similar charge[4].

3553(3-6) *kinds of sentences available*; *sentencing guidelines range*; *pertinent policy statements of the USSG*; and *unwanted sentencing disparities*:

Sentencing Mr. Navarro to 168 months in prison (bottom of the guidelines as calculated in the PSR) will create unwanted sentencing disparities with the co-defendant's in this case and with offenders generally. There has been a trend over the past several years by the USSC to reduce sentences for nonviolent drug offenses as evidenced by the passing of the First Step Act (2018), which made the drug-minus-two amendment (USSG 782) retroactive and increased the criminal history points an offender can have from one to four to qualify for safety valve. Moreover, 168 month sentence is well above the average sentence (61 months) for similarly situated defendants according to the most recent statistics from the USSC (2020). *See* fn. 4. Mr. Navarro's case does not have aggravating factors that would warrant such a severe sentence. Accordingly, a sentence of 97 months in prison is sufficient to accomplish the sentencing goals of § 3553(a).

Additionally, Mr. Navarro is requesting a downward departure from the criminal history category III (PSR ¶ 109) to a criminal history category II pursuant to §4A1.3(b). Mr. Navarro has four total criminal history points (PSR ¶ 109). Three of the four criminal history points stem from the same misdemeanor offense (Driving while having a measurable blood alcohol) (PSR ¶ 105 and 108). Mr. Navarro was arrested for a DUI and related charges in California on April 19, 2017; the DUI charge was dismissed and he pled guilty to what appears to be a lesser charge of driving while having a measurable blood alcohol and sentenced to probation that was later revoked, a final

---

[4] According to the U.S.S.C.'s most recent offender statistics (2020) for fentanyl drug trafficking offenses, the average sentence is 61 months in prison. The sentencing statistic can be found at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Fentanyl_FY20.pdf For other major drug trafficking offenses, the average sentences range from 66 months to 94 months in prison. The sentencing statistics can be found at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2020/FigureD3.pdf

revocation hearing is pending (PSR ¶ 105). Seventy-five percent (3 points) of Mr. Navarro's four criminal history points comes from this minor charge. Scoring him in a criminal history category III substantially over-represents Mr. Navarro's criminal history. Consequently, Mr. Navarro should receive a downward departure or variance to a criminal history category II to more accurately reflect the impact on his advisory guideline sentence of his criminal history.

A sentence of 97 months (low end of a guideline range of level 29, criminal history category II) will satisfy the sentencing factors in § 3553(a), punish Mr. Navarro more accurately for his role in this conspiracy, and be more consistent with similarly situated Defendants.

WHEREFORE, the Defendant, DIEGO NAVARRO, respectfully requests that this Court grant him a downward departure or downward variance akin to a total offense level of 29 with a criminal history category II (97-121) and sentence him to no more than 97 months in prison with any term of supervised release this Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing motion has been furnished by CM/ECF to all counsel of record on November 30, 2021.

Respectfully submitted,

*/s/ Gregory J. Morse*
Gregory J. Morse, Esq.
Morse & Morse, L.L.C.
707 N. Flagler Dr.
West Palm Beach, FL 33401
(561) 651-4145
email: greg@morselegal.com
        tiffany@morselegal.com
Florida Bar No.: 0505099
Attorney for Defendant-D. Navarro